United States District Court
District of Massachusetts

```
_____
                            )
Nasuni Corporation,         )
                            )
          Plaintiff,        )
                            )
          v.                )   Civil Action No.
                            )   21-11388-NMG
ownCloud GMBH,              )
                            )
          Defendant.        )
_____ )
```

MEMORANDUM & ORDER

GORTON, J.

This action arises out of a contractual dispute between Nasuni Corporation ("Nasuni" or "plaintiff") and ownCloud GmbH ("ownCloud" or "defendant"). Plaintiff asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent and negligent misrepresentation, and unfair and deceptive acts and practices. Pending before the Court is the motion of ownCloud to dismiss for insufficient service of process, lack of personal jurisdiction and failure to state a claim.

I.   **Background**

    **A. Parties**

Nasuni is a company that offers a proprietary electronic filing system which permits customers to store, protect and

- 1 -

synchronize electronic files.  It is incorporated in Delaware and has a principal place of business in Massachusetts.

Shortly after the onset of the COVID-19 pandemic in the spring of 2020, Nasuni sought a partner from which it could purchase software to improve the performance and enhance the functionality of its product because many of its customers had transformed their operations to remote work environments.  More specifically, Nasuni wanted software that would synchronize its data, improve web browser access capabilities and integrate with Microsoft's Teams and 365 software products ("MS Teams" and "MS 365," respectively).  After conducting a comparative analysis of several potential business partners and the software each offered based upon publicly available information, Nasuni determined that the capabilities of ownCloud's software product was well-suited to its needs.

Defendant is a German limited liability company with a principal place of business in Nuremberg, Germany.  The business was founded as ownCloud, Inc., a Delaware corporation, in 2011 and was originally headquartered in Massachusetts.  In 2016, after one of the co-founders of left the company, ownCloud continued its business' operations but transferred its headquarters to Nuremberg, where it had previously maintained an office.  One of the original founders of ownCloud, Inc.

continues to serve as managing director and chief operating officer of ownCloud.

During the late summer and early fall of 2020, Nasuni engaged in a series of discussions with ownCloud concerning a partnership between the two companies.  Defendant assured Nasuni that such a partnership would provide the features and functionality that Nasuni sought and that had been represented in the publicly available information that Nasuni had reviewed.

**B. Partner Base Agreement**

Nasuni and ownCloud subsequently negotiated the Partner Base Agreement ("PBA"), which set forth the terms of their partnership and was executed in November, 2020.  In the PBA, Nasuni agreed to license ownCloud's software and purchase services from ownCloud with the intent to market both the software and services to its own customers.  Nasuni prepaid $500,000 for 100,000 user subscription licenses of the software, plus $5,000 for the right to re-brand the software as Nasuni's Work From Anywhere ("WFA") product.

In Section 4.2 of the PBA,

ownCloud warrants...that the Commercial Software and Services shall operate substantially in accordance with its documentation[.]  ownCLoud warrants to [Nasuni] that if any Commercial Software or Service fails to meet ownCloud's specifications, ownCloud shall have an opportunity to cure this material breach, but in any case within thirty (30) days of the

> initial failure, [Nasuni] may request a refund or
> replacement of such Commercial Software or refund or
> re-performance of such Service.

Section 1 of the PBA defines that documentation as "any documentation provided by ownCloud" in connection with Nasuni's use of the software.

The agreement provided in Section 6.3 that if either party materially breached its obligations, covenants or warranties, and failed to cure that breach within 30 days of receipt of written notice, the other party could terminate the agreement. Additionally, as specified in Section 6.7:

> In the event of a termination because of an uncured
> material breach (including, without limitations,
> pursuant to section 4.2 and 6.3), [Nasuni] shall
> receive a refund of any fees prepaid hereunder for any
> unused subscriptions to the Software at the time of
> the termination being effective.

The PBA also includes a choice of law provision, which states that the agreement is to be interpreted in accordance with New York law, and an integration clause.

Exhibit C to the PBA sets forth the processes and timelines by which ownCloud was contractually obligated to integrate its software with MS Teams and MS 365, integrations that had not been available historically.  As set forth in that document, Nasuni agreed to prepay for the relevant software licenses

> in reliance upon ownCloud's promise to complete the
> Integration of its Software with Microsoft Teams by

March 31, 2020 [that date having preceded the date of
the contract], and with Microsoft Office 365 within
Five (5) months of the Parties' mutual determination
that such integration is technically feasible and will
not be blocked by Microsoft.

Exhibit C further provides that "ownCloud's failure to deliver
such integrations on time shall be a material breach of the
Agreement".

### C. Performance

Nasuni promptly experienced difficulties in its partnership
with ownCloud.  As articulated in the complaint, the
presentation and content of a multi-day event in January, 2021
designed to train Nasuni employees on the use of ownCloud's
software was allegedly unprofessional and haphazard.  The
training, as well as subsequent efforts by Nasuni to utilize the
software, purportedly revealed that ownCloud had misrepresented
the performance and functionality of its software.

Nasuni contends that it nevertheless conducted four pilot
projects to test ownCloud's software, one internal to Nasuni and
three with existing Nasuni customers.  Each of those pilots are
said to have exposed significant problems with the software,
including inadvertent data loss, poor performance, and overly
complex installation and integration processes.  Nasuni contends
that those failed pilots resulted in inconvenience and expense,
as well as loss of goodwill and reputation.

Nasuni also asserts that ownCloud failed to meet the
deadlines for integration set forth in Exhibit C to the PBA.
The code ownCloud delivered for the MS Teams integration project
on March 26, 2021 was allegedly defective.  As set forth in the
complaint, ownCloud never delivered code to support the
integration of MS 365 even though Nasuni delivered the necessary
project requirements.

Due to the purported failure of the pilots and
integrations, Nasuni provided ownCloud with written notice of
alleged material breaches of the PBA on March 15, 2021.
Defendant denied the breaches and declined to take additional
measures.  Nasuni subsequently provided ownCloud, on May 24,
2021, with written notice of termination of the PBA and
requested a refund of the fees it had prepaid for unused
subscriptions to the software, i.e. the entire contract price.
Defendant refused to reimburse Nasuni.

Nasuni asserts that it has sustained damages due not only
to the loss of the contract price, but also losses accrued in
branding and marketing Nasuni's WFA product that it cannot sell,
resources expended in connection with ownCloud's training event,
amounts spent in connection with the failed pilot projects, lost
profits caused by the inability to sell the WFA product, and
damage to Nasuni's goodwill and reputation.  Nasuni contends

that ownCloud knowingly and willfully misrepresented its software and services to Nasuni.

Plaintiff initiated the pending litigation in June, 2021 in Massachusetts Superior Court for Suffolk County and amended its complaint the following month.  Defendant subsequently removed the case to this Court based upon diversity jurisdiction.

## II.  **Motion to Dismiss**

### i. **Service of process**

The defendant has moved to dismiss this action, pursuant to Fed. R. Civ. P. 12(b)(5), on the basis of insufficient service of process.

> Before a federal court may exercise personal
> jurisdiction over a defendant, the procedural
> requirements of service of summons must be satisfied.

Nuance Commc'ns, Inc. v. Abbyy Software House, 626 F.3d 1222, 1236 (Fed. Cir. 2010), quoting Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987).  Once a defendant challenges the sufficiency of process, the plaintiff has "the burden of proving proper service." Rivera-Lopez v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992).

Defendant contends that Nasuni failed to serve process properly because Nasuni originally served ownCloud, Inc., rather than ownCloud GmbH.  According to ownCloud, that service was

ineffective because the Delaware corporation is a distinct corporate entity against which plaintiff has asserted no claims whatsover.  In response, plaintiff contends that its service on ownCloud's domestic affiliate was proper and that, even if it was not, the time for service should be extended, rather than the case dismissed, to permit Nasuni to serve process upon the foreign defendant.  Nasuni also emphasizes that ownCloud has had actual notice of the litigation since shortly after the original complaint was filed in state court, as evidenced by ownCloud's notice of removal, which was submitted to this Court less than one month after the Delaware corporation was served.

In May, 2022, Nasuni filed a supplemental memorandum informing this Court that process had been served on ownCloud in Germany pursuant to the Hague Convention in March, 2022. Defendant responded that such service was untimely and procedurally deficient.

Rule 4 of the Federal Rules of Civil Procedure and relevant caselaw provide a variety of methods by which a plaintiff may serve process on a foreign corporation such as ownCloud.  Two of those methods are relevant here.  First, service may be effectuated by following the internal law of the forum. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 704 (1988).  Parties do not dispute that Massachusetts, the forum

state, allows service of process through an agent or alter ego.
Concepts NREC, LLC v. SoftInway, Inc., No. 19-CV-12033-IT, 2021
WL 916259, at *9 (D. Mass. Mar. 10, 2021).  Second, under Rule
4(f), service upon a foreign corporation may be accomplished
outside the United States:

> by any internationally agreed means of service that is
> reasonably calculated to give notice, such as those
> authorized by the Hague Convention on the Service
> Abroad of Judicial and Extrajudicial Documents[.]

Fed. R. Civ. P. 4(f)(1).

Nasuni originally sought to serve process pursuant to the
first of those methods, serving ownCloud, Inc.  The relationship
between defendant and that Delaware corporation is not entirely
clear from the record: Nasuni implies that ownCloud, Inc. is the
alter ego of the foreign defendant because it is its domestic
affiliate but proffers no substantive evidence to support that
contention.  That argument, without more, is unavailing where
courts have narrowly defined circumstances in which it is proper
to pierce the corporate veil to justify service upon a non-
party. See Scott v. NG U.S. 1, Inc., 881 N.E.2d 1125, 1132
(Mass. 2008).  Nasuni's unsupported assertion that ownCloud,
Inc. is the registered agent for its foreign parent and that
defendant "assumed the operations" of OwnCloud, Inc. are
similarly deficient. See Aro Mfg. Co. v. Auto. Body Research
Corp., 352 F.2d 400, 403 (1st Cir. 1965) (declining to find

service on subsidiary constituted service on parent entity where
there were only conclusory allegations of alter ego or agency
relationship); see also 62B Am. Jur. 2d Process § 239
(2007) ("Generally, service on a parent, subsidiary,
cosubsidiary, or affiliate of a corporate defendant is not
service on the defendant...."). "[C]lear evidence" is required
to overcome the "presumption of corporate separateness" and
Nasuni, the party which bears the burden in this matter, has
failed to provide such evidence. Negron-Torres v. Verizon
Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007); see Concepts,
at *9.  Furthermore, Nasuni's reliance on actual notice is
unavailing in these circumstances, see Precision Etchings &
Findings v. LPG Gem, Ltd., 953 F.2d 21, 24 (1st Cir. 1992)
(citation omitted).  The initial attempt of Nasuni to serve
process on ownCloud, Inc. was therefore ineffective.

        Plaintiff, however, tried again.

        In countries party to the Hague Convention, such as
Germany, service from abroad is administered through a Central
Authority designated to receive international judicial documents
and to serve those documents in accordance with that country's
own law or by a method requested by the sender that complies
with that law. See Hague Convention art. 5, para. 1(a)-(b).
Following service, the Central Authority is required to return

to the party that requested service a certificate that the documents have in fact been served. See Hague Convention art. 6.

In accordance with those procedures, as well as supplementary processes concerning the translation of documents specific to service upon a German corporation, Nasuni submitted a request for service on ownCloud to the German Central Authority in December, 2021.  The Central Authority subsequently returned a certificate in March, 2022 confirming that ownCloud had been served by personal delivery at its corporate offices in Nuremberg.  According to that certificate, ownCloud's legal representative was not present at the time of service and the documents were thus delivered to an employee of ownCloud.

Defendant contends that service was nevertheless deficient due to, inter alia, the months-long delay between the initiation of the litigation and service.  Neither Rule 4 nor the Hague Convention establish time limits with respect to service on a foreign defendant. See Fed. R. Civ. P. 4 advisory committee notes to 1993 amendment, subd. (f).  Courts have, however, found dismissal based upon failure to serve justified where there is evidence that a plaintiff has been "dilatory" in efforts to serve process. Feliz v. MacNeill, 493 F. App'x 128, 131 (1st Cir. 2012).  There is no evidence of such indolence here and Nasuni has provided compelling evidence to the contrary,

demonstrating its diligence despite "the slow and stringent procedures" of the Hague Convention. Marcantonio v. Primorsk Shipping Corp., 206 F. Supp. 2d 54, 60 (D. Mass. 2002). For example, although ownCloud never responded to an October, 2021 request for waiver of service, Nasuni facilitated the submission of a request for service to the Central Authority soon thereafter. Dismissal is unwarranted on that account.

The Court also rejects the other bases upon which ownCloud contends that service was inadequate. First, ownCloud asserts that the materials with which it was served were insufficient. That claim finds no support in the record and is contradicted by the certificate from the Central Authority which provides prima facie evidence to the contrary. Heidelberg USA, Inc. v. PM Lithographers, Inc., No. CV1702223ABAJWX, 2017 WL 7201872, at *4 (C.D. Cal. Oct. 19, 2017) ("It is not the place of this Court to question the German Central Authority's certification that [defendant] was served...."); see Taite v. Bridgewater State Univ., 236 F. Supp. 3d 466, 472 (D. Mass. 2017).

Second, while ownCloud maintains that service was ineffective because the individual served was an employee, rather than a person specifically authorized to accept service on behalf of the corporation, the German Code of Civil Procedure allows for such service in certain circumstances. Bergerliches

Gesetzbuch [BGB] [Civil Code], § 178, para. 1, translation at
https://www.gesetze-im-internet.de/englisch_zpo/englisch_zpo.htm
l (Ger.) ("Should the person on whom documents are to be served
not be located at his residence, business premises, or in an
institution in which he is a resident, the document may be
served...[a]t business premises: on a person employed there").
As outlined <u>supra</u>, the Hague Convention permits service to be
effectuated in any manner allowed under the laws of the country
in which service is made.  Effectuating service on ownCloud by
delivering the materials to an employee was therefore
permissible because ownCloud's legal representative was not
present at the time of service.

Nasuni therefore validly served process on ownCloud and
dismissal pursuant Fed. R. Civ. P. 12(b)(5) is unwarranted.

### ii. Personal jurisdiction

Defendant also seeks to dismiss the complaint for lack of
personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).
Plaintiff bears the burden to show that the Court has authority
to exercise jurisdiction over defendant. <u>Cossart</u> v. <u>United Excel
Corp.</u>, 804 F.3d 13, 18 (1st Cir. 2015).  Where, as here, the
Court will decide a motion to dismiss for lack of personal
jurisdiction without first holding an evidentiary hearing, the
Court takes plaintiff's

> properly documented evidentiary proffers as true and construe[s] them in the light most favorable to [plaintiff's] jurisdictional claim.

A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016).   A plaintiff cannot, however, rely on "unsupported allegations" and "must put forward evidence of specific facts to demonstrate jurisdiction exists." Id. (citations omitted).

In a diversity suit such as this one, this Court acts as "the functional equivalent of a state court sitting in the forum state." Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009).  As such, plaintiff must demonstrate the exercise of personal jurisdiction: is permitted by the Massachusetts long-arm statute, M.G.L. c. 223A § 3, and coheres with the Due Process Clause of the Fourteenth Amendment by showing that the defendant has "minimum contacts" with the Commonwealth. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002).

This Court's jurisdiction may be either "specific" or "general." United States v. Swiss Am. Bank, 274 F.3d 610, 618 (1st Cir. 2001).  Specific jurisdiction requires a "demonstrable nexus" between the claims of the plaintiff and the defendant's contacts in the forum state. Id.  Such contacts must demonstrate that defendant "purposeful[ly] avail[ed] [itself] of the privilege of conducting activities in the forum state." Noonan

v. <u>Winston Co.</u>, 135 F.3d 85, 90 (1st Cir. 1998).  General

jurisdiction, on the other hand, exists when the defendant has

engaged in "continuous and systematic activity, unrelated to the

suit, in the forum state." <u>Swiss Am. Bank</u>, 274 F. 3d at 618.

## 1. Massachusetts long-arm statute

The Massachusetts long-arm statute provides, in relevant

part, that a court may exercise personal jurisdiction:

> over a person, who acts...as to a cause of action in law or
> equity arising from the person's (a) transacting any
> business in this commonwealth [or] (b) contracting to
> supply services or things in this commonwealth....

M.G.L. c. 223A, § 3.  The requirements of the Massachusetts

long-arm statute are substantially similar to (although

potentially more restrictive than) those imposed by the Due

Process Clause of the Fourteenth Amendment. <u>See</u> <u>Copia Commc'ns,</u>

<u>LLC</u> v. <u>AMResorts, L.P.</u>, 812 F.3d 1, 4 (1st Cir. 2016); <u>Baskin-</u>

<u>Robbins Franchising LLC</u> v. <u>Alpenrose Dairy, Inc.</u>, 825 F.3d 28,

34 (1st Cir. 2016).  This Court independently analyzes personal

jurisdiction pursuant to that statute due to the distinction

between the two regimes, although neither party did so.

The plain language of Mass. Gen. Law c. 223A, § 3(b)

provides this Court with jurisdiction over ownCloud.  Within

that section, the Supreme Judicial Court has construed the

phrase "in this commonwealth" to refer to

the place where the services or things are to be
supplied, rather than referring to the place of the
contracting.

Droukas v. Divers Training Acad., Inc., 376 N.E.2d 548, 553

(Mass. 1978).  As set forth in the PBA, the goods and services

that Nasuni purchased from ownCloud were to be supplied to

Nasuni, a Massachusetts based corporation, and then re-branded

as Nasuni's own before being resold to end-user customers.

While there is no factual allegation that the contract included

a requirement to "specifically deliver or supply the receivables

to the Commonwealth[,]" the facts support the conclusion that

the PBA was a "contract to supply" goods and services in

Massachusetts given the digital quality of those deliverables.

Filmore v. VSP N. Am., LLC, No. CV 18-10256-MBB, 2019 WL 184075,

at *7 (D. Mass. Jan. 14, 2019) (citation omitted).  The claims

at issue arise from that contractual relationship.

An analysis of the prior statutory section, Mass. Gen. Law

c. 223A, § 3(a), which is much more frequently applied and

analyzed, supports that conclusion.  The term "transacting" as

utilized therein is construed broadly and employed "to identify

deliberate, as distinguished from fortuitous, contacts with the

forum by the nonresident party[.]" Lyle Richards Int'l, Ltd. v.

Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997) (citation

omitted).  For a court to exercise personal jurisdiction over a

defendant pursuant to the provision, a plaintiff is thus required to show that: (1) the defendant attempted to participate in the Commonwealth's economic life and (2) the transacted business was a "but for" cause of the alleged harm. Tatro v. Manor Care, Inc., 625 N.E.2d 549, 552-53 (Mass. 1994).

While that is a liberal standard, not "any contractual communication into Massachusetts is sufficient to establish personal jurisdiction." M-R Logistics, LLC v. Riverside Rail, LLC, 537 F. Supp. 2d 269, 275 (D. Mass. 2008) (emphasis original).  Rather, courts holistically assess the relationship between parties before and after the execution of a contract. Id. at 275-276.  Typical bilateral contract negotiations between in-state purchasers and out-of-state suppliers, without more, are "viewed as ancillary activity without substantial commercial consequence in the forum" and do not generally trigger personal jurisdiction. Little, Brown and Co. (Inc.) v. Bourne, 493 F. Supp. 544, 547 (D. Mass. 1980) (citations omitted).

Here, communication between the parties extended well beyond the typical.  Nasuni and ownCloud engaged in lengthy negotiations and interacted frequently after the contract was finalized, during, for instance, the pilot projects.  That "purposeful direction of communication into Massachusetts," Energy Cap. & Servs. LP, II v. Hill Refrigeration, Inc., 989 F.

Supp. 353, 355 (D. Mass. 1997), in conjunction with the
frequency and depth of that communication, as well as the
$505,000 sent from Nasuni in Massachusetts to ownCloud,
cumulatively amounts to "transacting business" within the
meaning of the statute. See BCCTC Assocs., Inc. v.
Summerdale/AAHFI, L.P., 656 F. Supp. 2d 208, 215 (D. Mass.
2009). Of particular import is the negotiation that resulted in
the "unique terms" of the contract, specifically Exhibit C to
the PBA, which reveal the extensive, direct communication
between the parties. EIQnetworks, Inc. v. BHI Advanced Internet
Sols., Inc., 726 F. Supp. 2d 26, 33 (D. Mass. 2010). In the
context of the relationship, the fact that defendant did not
initiate or solicit plaintiff's business, while determinative in
certain circumstances, does not alter the analysis. See LaForest
v. Ameriquest Mortg. Co., 383 F. Supp. 2d 278, 283 (D. Mass.
2005). Defendant attempted to, and indeed did, participate in
the economic life of the Commonwealth.

The "but-for" standard is also met where, as here, the
plaintiff's claims arise from ownCloud's contacts with the
Commonwealth. Those contacts were among the "train of events"
that resulted in alleged injury and emanated from the agreement
upon which the claims are based. Tatro v, 625 N.E.2d at 553; see
EIQnetworks, Inc., 726 F. Supp. 2d at 33.

Plaintiff therefore identifies sufficient contacts of ownCloud with Massachusetts to satisfy the long-arm statute.

## 2. Due process clause

Plaintiff must also demonstrate that the Court's exercise of personal jurisdiction over ownCloud comports with the United States Constitution. See Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945). Nasuni does not contend that this Court has general jurisdiction over ownCloud and it is thus only necessary to determine whether specific personal jurisdiction exists. To support the Court's exercise of such jurisdiction, plaintiff must make an "affirmative showing" that: (1) the litigation relates to or arises out of the defendant's contacts with the forum state, (2) defendant purposefully availed itself of the privilege of conducting business in the forum state and (3) jurisdiction over the defendant is reasonable under the circumstances. Sawtelle v. Farrell, 70 F.3d 1381, 1388 (1st Cir. 1995); Phillip Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).

The relatedness inquiry is a "flexible, relaxed standard" that asks whether the plaintiff's claims "directly arise[] out of, or relate[] to" the defendant's activities in the forum state. Astro-Med, Inc., 591 F.3d at 9 (quotations omitted). The

standard "is functionally the same as the statutory requirement"
of Massachusetts' long-arm statute. M-R Logistics, 537 F. Supp.
2d at 277.  As described supra, ownCloud's contacts with Nasuni
in Massachusetts during the negotiation and execution of the
contract satisfy that requirement.  Defendant's alleged failure
to deliver the relevant software and services to the
Massachusetts-based plaintiff in Massachusetts constitute the
foundation of the litigation.  As a result, Nasuni's claims
arise directly from the contacts of ownCloud with it and, as a
result, with Massachusetts.

To satisfy the second requirement, a plaintiff must
demonstrate that defendant's in-state contacts represent a
"purposeful availment" of the privilege of conducting business
in the forum state such that it may be said the defendant
invoked the benefits and protections of the forum state's laws
and its involuntary presence in a court in the forum state was
foreseeable. Astro-Med, Inc., 591 F.3d at 10.  While engaging in
this analysis:

> the court is to look at all of the communications and
> transactions between the parties, before, during and
> after the consummation of the contract, to determine
> the degree and type of contacts the defendant has with
> the forum, apart from the contract alone.

Ganis Corp. of California v. Jackson, 822 F.2d 194, 197-98 (1st
Cir. 1987).  The focus is on "voluntariness and foreseeability."

N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005) (quotation and citation omitted).

Here, Nasuni has provided evidence that communication between Nasuni and ownCloud related to the negotiation and execution of the PBA was extensive.  Those interactions, as well as the training event, pilot projects and receipt of payment from Massachusetts, cumulatively indicate that ownCloud intended to do business and availed itself of the privilege of conducting business in the state. See EIQnetworks, 726 F. Supp. 2d at 35. It was therefore foreseeable that ownCloud would be haled into a Massachusetts courtroom in litigation arising from the PBA. Defendant actively and knowingly engaged in business in Massachusetts and, consequently, the requirement is satisfied.

Finally, the plaintiff must demonstrate that the Court's exercise of jurisdiction is reasonable.  The Supreme Court has provided a set of "gestalt factors" to consider in evaluating reasonableness, which include: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudication, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in obtaining the most efficient resolution and (5) the shared societal interest in promoting fundamental substantive social policies. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

Considering those factors, the Court's exercise of jurisdiction over ownCloud is fair and reasonable.  With respect to the first factor, courts recognize that it is often burdensome to appear in a foreign jurisdiction.  See, e.g., Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 68-69 (D. Mass. 2001).  For the first factor to have any significance, however, a defendant must demonstrate that the exercise of jurisdiction is "onerous in a special, unusual, or other constitutionally significant way." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994).  Defendant proffers no reason that its burden of litigating in Massachusetts is unusually onerous, particularly when ownCloud has indicated that it anticipated litigation pursuant to the PBA would be brought in New York (around the corner from Massachusetts) rather than Germany. This factor weighs in favor of exercising jurisdiction.

Each of the remaining factors either weighs in favor of exercising jurisdiction or does not weigh heavily in either direction.  As to the second factor, Massachusetts has an interest in adjudicating this dispute because it involves a Massachusetts corporation alleging wrongful conduct.  The third factor also weighs in favor of exercising jurisdiction because Nasuni's chosen venue is Massachusetts and plaintiff is based here. See Sawtelle, 70 F.3d at 1395.  There has been no

- 22 -

suggestion that another forum could provide a more efficient resolution of the pending litigation and, thus, as is often the case, that factor does not impact the decision in either direction. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 211 (1st Cir. 1994). The final factor weighs in favor of exercising jurisdiction. The most salient interest at issue here is the ability of Massachusetts to provide a convenient forum for its residents to redress injuries inflicted by out-of-state actors. See Sawtelle, 70 F.3d at 1395.

Nasuni has thus demonstrated that this Court's exercise of personal jurisdiction satisfies constitutional requirements.

Defendant doggedly asserts that this Court lacks personal jurisdiction because the PBA includes a choice of law provision specifying that the contract is to be interpreted in accordance with New York law. While such a provision should not be ignored in the jurisdictional assessment, neither is it determinative. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 482 (1985). New York law will govern the contract regardless of the forum and there is no injustice in having a Massachusetts court apply that law. See C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 71 (1st Cir. 2014); Int'l Bus. Machines Corp. v. Merlin Tech. Sols., Inc., No. CIV 06-40174-FDS, 2007 WL 335258, at *8 (D. Mass. Feb. 1, 2007). Moreover, that choice of law provision

does not undermine the conclusion that ownCloud purposely availed itself of the benefits and protections of Massachusetts law. Marine Charter & Storage Ltd., Inc. v. Denison Marine, Inc., 701 F. Supp. 930, 934 (D. Mass. 1988).  Significantly, the choice of law provision includes no forum selection clause. See Int'l Bus. Machines Corp., at *8.

### iii.  Adequacy of pleadings

Defendant also moves to dismiss each of the five claims set forth in the complaint, alleging that Nasuni has failed to state claims upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  To survive such a motion, the subject pleading must contain sufficient factual matter to state claims for relief that are actionable as a matter of law and "plausible on [their] face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted).  Claims are facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st

Cir. 2011).  A court also may not disregard properly pled
factual allegations even if actual proof of those facts is
improbable. Ocasio-Hernandez, 640 F.3d at 12.  Rather, the
inquiry required focuses on the reasonableness of the inferences
of liability that plaintiff asks the court to draw. Id. at 13.
The assessment is holistic: "the complaint should be read as a
whole, not parsed piece by piece to determine whether each
allegation, in isolation, is plausible". Hernandez-Cuevas v.
Taylor, 723 F.3d 91, 103 (1st Cir. 2013), quoting Ocasio-
Hernandez, 640 F.3d at 14.

### 1. Breach of contract

Nasuni contends that ownCloud breached the PBA by failing
to supply software that operated in accordance with the
documentation and specifications set forth therein and failing
to integrate MS 365 and MS Teams within the reuqired timeframes.
Moreover, Nasuni asserts that, in contravention of the PBA,
ownCloud neither cured nor remedied those material breaches.

Defendant does not dispute Nasuni's substantive allegations
but rather argues that ownCloud is excused from performance
based upon the doctrine of impossibility.  The first
justification ownCloud provides to support that defense is that
Exhibit C to the PBA provides that ownCloud promises to complete
the MS Teams integration by March 31, 2020, approximately eight

months prior to the execution of the contract (and clearly a typographical error).  The second justification is that the unprecedented COVID-19 pandemic hindered performance.

Even without delving into the merits of that defense, of which the Court is dubious, it is apparent that neither of those arguments justify dismissal.

> Resolution of the defense of impossibility requires an examination into the conduct of the party pleading the defense....  In all but the clearest cases this will involve issues of fact that must be resolved by the district court only after the parties have had adequate opportunity to investigate and present their evidence.

Polk v. Del Gatto, Inc., No. 21 CIV. 129 (PAE), 2021 WL 3146291, at *9 (S.D.N.Y. July 23, 2021) (quotation omitted).  As such, whether ownCloud was unable to perform under the PBA cannot be resolved without discovery bearing on relevant factual issues, such as the impact of the pandemic upon ownCloud's activities. This Court thus will deny the motion to dismiss the claim.

### 2. Good faith and fair dealing

Nasuni asserts that ownCloud violated the covenant of good faith and fair dealing implied in all contracts governed pursuant to New York law by, inter alia, misrepresenting the capabilities of ownCloud's software, providing deliverables that were insufficiently tested, failing to take reasonable action to cure material breaches of the PBA, and withholding the refund

owed to Nasuni.  Defendant contends that this claim cannot stand because it is redundant of the claim for breach of contract.

Under New York law, which governs the PBA,

[A] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract.

Sanderson v. First Liberty Ins. Corp., No. 8:16-CV-644, 2017 WL 5176371, at *3 (N.D.N.Y. Nov. 7, 2017), appeal dismissed, No. 17-3892, 2018 WL 6428070 (2d Cir. Apr. 24, 2018).  Where those claims rest, however "on a different set of supporting facts" neither are subject to dismissal.  Endemann v. Liberty Ins. Corp., 390 F. Supp. 3d 362, 378 (N.D.N.Y. 2019), on reconsideration in part, No. 5:18-CV-00701, 2020 WL 5027241 (N.D.N.Y. Aug. 25, 2020).

As set forth in the complaint, this second cause of action is based, at least in part, upon allegations of conduct different than that which underlies the breach of contract claim.  The assertions that ownCloud misrepresented its product during negotiations are, for example, separate and apart from the contentions relevant to the breach of contract claim.  In contrast to the claim for breach of the implied covenant of good faith and fair dealing, which is factually based upon ownCloud's actions, "[t]he breach of contract claim is based not on what

[d]efendant did, but rather on what it did not do."
Sportsinsurance.com, Inc. v. Hanover Ins. Co., Inc., No.
820CV0403LEKDJS, 2021 WL 781286, at *8 (N.D.N.Y. Mar. 1, 2021),
amended on reconsideration, No. 820CV0403LEKDJS, 2021 WL 1404581
(N.D.N.Y. Apr. 14, 2021).  The former claim is therefore
distinct and not subject to dismissal.

### 3. Fraudulent and negligent misrepresentation

Nasuni alleges that, both before and after the execution of
the PBA, ownCloud engaged in fraudulent and negligent
misrepresentation with respect to its software and services.
Defendant responds that the claims must be dismissed because
they are duplicative of the breach of contract claim.

As an initial matter, the parties disagree as to what law
governs those claims.  In assessing the sufficiency of the
complaint, ownCloud considers only New York law whereas Nasuni
contends that Massachusetts law governs.  Choice of law
provisions, such as the one in the PBA, govern tort actions,
i.e. fraudulent and negligent misrepresentation, if breach is an
essential element of the tort claim. Ne. Data Sys., Inc. v.
McDonnell Douglas Computer Sys. Co., 986 F.2d 607, 609 (1st Cir.
1993).  This is not the case here, however, because Nasuni need
not prove breach of contract to demonstrate that ownCloud
fraudulently or negligently misrepresented its services or

software before or after the execution of the PBA.  See NPS, LLC
v. Ambac Assur. Corp., 706 F. Supp. 2d 162, 168 (D. Mass. 2010)
("[C]laims about the validity of a contract's formation, unlike
claims of an alleged breach, are not governed by a choice of law
provision.").  Under the functional choice of law framework
adopted in Massachusetts, which focuses on "the interests of the
parties, the States involved, and the interstate system as a
whole," Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622,
473 N.E.2d 662, 668 (1985), the Court concludes that the
appropriate law to apply here is that of Massachusetts.

Under that law, it is well-settled that parties can be
liable for misrepresentation in addition to breach of contract.
See generally G4S Tech. LLC v. Massachusetts Tech. Park Corp.,
99 N.E.3d 728, 743 (2018).  Moreover, contrary to the assertions
of ownCloud, neither the parol evidence rule nor a contractual
integration clause, such as that which is included in the PBA,
bars a plaintiff from pursuing a claim for misrepresentation.
See BRT Mgmt. LLC v. Malden Storage, LLC, No. CV 17-10005-FDS,
2019 WL 4007914, at *14 (D. Mass. Aug. 23, 2019).  Dismissal is
unwarranted on those grounds.

### 4. Chapter 93A violations

Finally, defendant seeks to dismiss the claim of unfair and
deceptive acts and practices pursuant to the Massachusetts

Consumer Protection Act, M.G.L. c. 93A ("Chapter 93A").
Defendant asserts that the claim should be dismissed because the
relevant conduct did not occur primarily and substantially in
the Commonwealth, the claim does not extend beyond a typical
breach of contract claim and the contract at issue includes a
New York choice of law provision such that Massachusetts state
law does not apply.

        None of those contentions is convincing.

        [A]t the pleading stage a [ch. 93A,] § 11 claim may
        survive a motion to dismiss based on a "primarily and
        substantially" challenge upon a showing that the
        plaintiff is located in Massachusetts and that the
        injury occurred in Massachusetts.

Jofran Sales, Inc. v. Watkins & Shepard Trucking, Inc., 216 F.
Supp. 3d 206, 216 (D. Mass. 2016) (citation omitted).  Here,
that standard is satisfied where Nasuni, a Massachusetts-based
corporation, was allegedly harmed by the conduct of ownCloud at
its Boston headquarters.  With respect to the second two bases
upon which ownCloud seeks dismissal of the Chapter 93A claim:

        [i]f a contract is governed by a particular state's
        law under a choice of law provision, then a party
        cannot bring a claim under another state's statute if
        that statutory claim is essentially duplicative of a
        contract claim.

NPS, LLC v. Ambac Assur. Corp., 706 F. Supp. 2d 162, 169 (D.
Mass. 2010) (quotation and citation omitted).  Nasuni's Chapter
93A claim is not, however, duplicative of its contract claim

because it is based, <u>inter alia</u>, upon "circumstances underlying the formation of the contract", such as alleged fraudulent inducement, rather than the contract itself. <u>Id</u>.  Although the Court is flattered by ownCloud's citation to the well-argued case of <u>Madan</u> v. <u>Royal Indem. Co.</u>, 532 N.E.2d 1214, 1217 (Mass. App. Ct. 1989), the facts at hand are markedly different from those at issue there, where the exclusive basis of the statutory claim was the breach of an oral argument.  Furthermore, the New York choice of law provision does not foreclose Nasuni's state law claim. <u>See</u> <u>ACI Worldwide Corp.</u> v. <u>KeyBank Nat'l Ass'n</u>, No. 1:17-CV-10662-IT, 2020 WL 5835130, at *4 (D. Mass. Sept. 30, 2020) (concluding that Texas choice of law provision does not bar 93A claim where tort rests upon allegations of fraud rather than breach of contract).  The Chapter 93A claims of Nasuni are therefore not subject to dismissal.

**ORDER**

For the foregoing reasons, defendant's motion to dismiss (Docket No. 12) is **DENIED**.


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated June 14, 2022